UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| ROBERT JONES, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 2:04CV00036 AGF ) |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This action is before the Court for judicial review of the final decision of the Commissioner of Social Security to terminate Plaintiff Robert Jones's disability insurance benefits after a continuing disability review under Title II of the Social Security Act, 42 U.S.C. § 401, et seq.[1] Plaintiff argues that the Commissioner committed reversible error in finding that Plaintiff's anxiety-related disorder was no longer a severe impairment, in disregard of the opinion of Plaintiff's treating psychiatrist. For the reasons set forth below, the decision of the Commissioner shall be affirmed.

## BACKGROUND

**Procedural History**

Plaintiff, who was born on March 19, 1950, applied for disability benefits on April 20, 1994, due to spondylosis (spinal osteoarthritis) of the back, and panic and anxiety

---

[1] The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

disorders. On October 27, 1995, an administrative law judge (ALJ) found that claimant had been disabled since March 14, 1994, and that a substance abuse disorder was a contributing factor. A redetermination decision was issued in September 1996, pursuant to new amendments to the Act regarding drug and alcohol abuse. This decision held that Plaintiff was not disabled, independent of drug and alcohol abuse, and that, therefore, he was not entitled to benefits.

Plaintiff requested a hearing before an ALJ, and on March 27, 1997, following a hearing, another ALJ found that Plaintiff had been disabled since March 14, 1999, and that his history of drug and alcohol abuse was not a contributing factor. The ALJ found that Plaintiff's anxiety-related disorder impaired his ability to deal with the basic mental demands of unskilled work, with moderate restriction of activities of daily living; marked difficulties maintaining social functioning; and moderate difficulties maintaining concentration, persistence, or pace. (Tr. at 27-33).

On March 26, 2001, Plaintiff was notified that upon continuing disability review, it was determined that his condition had medically improved to the point where he was able to work starting in March 2001, and that his last payment of benefits would be for May 2001. (Tr. at 42-43). This decision was affirmed on reconsideration, and Plaintiff requested a hearing before an ALJ. A hearing was held on August 14, 2003, at which Plaintiff, who was represented by counsel, and a vocational expert testified. On December 19, 2003, the ALJ held that Plaintiff's disability had ceased as of March 15, 2001. The Appeals Council of the Social Security Administration denied Plaintiff's

2

request for review. Plaintiff has thus exhausted all administrative remedies, and the ALJ's decision of December 19, 2003, stands as the final agency action subject to judicial review.

**Medical Record**

Because Plaintiff only challenges the ALJ's decision with respect to Plaintiff's mental impairments, the Court will focus its review of the administrative record on this issue. A Master Treatment Plan prepared by a social worker on March 12, 2000, indicated that Plaintiff's current GAF (Global Assessment of Functioning) score was 70.[2] The form further indicated that there had been a reduction in Plaintiff 's psychiatric symptoms, and that continued management of psychiatric medication was needed every two to three months. Diagnoses of panic disorder without agoraphobia; personality disorder not otherwise specified (NOS); and antisocial behavior and obsessive-compulsive and passive-aggressive features were noted. The estimated length of continued treatment was one year, with the goal that Plaintiff would thereafter no longer need medication services. Plaintiff's treating psychiatrist, Armonda Favazza, M.D., signed the report on June 12, 2000. Tr. at 154-55.

---

[2] A GAF score represents a clinician's judgment of an individual's overall ability to function in social, school, or occupational settings, not including impairments due to physical or environmental limitations. Diagnostic & Statistical Manual of Mental Disorders (4th ed.) (DSM-IV) at 32. GAF scores of 41 to 50 reflect "serious" impairments in functioning; scores of 51-60 indicate "moderate" difficulties; scores of 61-70 indicate "mild" difficulties; scores of 71-80 indicate "slight" difficulties and only transient and expected reactions to psychological stressors.

Meanwhile, follow-up treatment notes by Dr. Favazza dated June 5, 2000, reported that Plaintiff was taking Xanax (an antianxiety drug) five times a day and was "doing ok." Dr. Favazza noted that Plaintiff enjoyed going fishing. Tr. at 141. The record includes similar follow-up notes from August and November 2000; February, May, July, September, and December 2001; March, June, August, and November 2002; and May and August 2003. Tr. at 142, 143, 156, 255-73. For the most part, these treatment notes (to the extent they are legible) reflect that Plaintiff was "generally in good spirits," as the November 2000 notes state. Tr. at 143. As another example, the notes from August 2000 state that Plaintiff reported going to the Ozarks with a lot of his relatives and having a "pretty good time." Tr. at 142. On January 11, 2001, Dr. Favazza wrote on a form to the state disability agency that Plaintiff's panic disorder was under good control, and that his disability was based on his back problems. Tr. at 138.

On January 24, 2001, Plaintiff completed a Claimant's Questionnaire. He indicated that his level of activity depended on the level of his back pain and anxiety. With respect to his anxiety, he wrote that it had been with him constantly since childhood, and that it prevented him from engaging in much social activity. Plaintiff wrote that he had been taking Xanax since 1990, and that he was taking 2.5 mg per day. He wrote that he visited people, walked, maintained his home, and got out of his house "every chance I get - anxiety makes me want to do things." Tr. at 103-07.

On February 23, 2001, consulting physician George Solomon, M.D., conducted a disability examination of Plaintiff. Noting that Plaintiff was cooperative during the visit,

4

Dr. Solomon opined that Plaintiff had no physical limitations in basic work-related activities. With regard to mental limitations, Dr. Solomon wrote that Plaintiff's panic disorder seemed to be under good control with his current dosage of Xanax (0.5 mg five times per day). Dr. Solomon added: "Getting more information from his psychiatrist may be helpful in understanding if [Plaintiff's panic disorder] caused him significant disability currently in his life. On the surface today it does not seem to." Tr. at 158-59.

Dr. Solomon also completed a Mental Status form as part of his report. This report indicated that Plaintiff's affect and personal appearance were appropriate, that his memory of past and recent events was good, and that there were no restrictions in his daily activities or constriction of interest, although Plaintiff felt that he had never dated due to his anxiety. Dr. Solomon further indicated that Plaintiff's thinking was "OK," that he related well with others, and that his anxiety neurosis was under good control with Xanax. Tr. at 161.

The record includes two Psychiatric Review Technique reports completed by state agency non-examining consulting physicians. The first one is dated March 26, 2001, and the second one is dated June 11, 2001. Each indicates, in check-box form, that Plaintiff had an anxiety-related (panic) disorder that was not severe, which resulted in mild limitations in maintaining social functioning; no limitations in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation of extended duration. The first report found mild limitations in activities of daily living, while the second found no limitations in this area. Each report also indicated that the evidence of record did not

5

establish the presence of the "C" criteria of listing 12.06 (anxiety-related disorders) in 20 C.F.R., Part 404, Subpart P, Appendix 1.[3] The first report further indicated that the evidence did not establish the "C" criteria for listing 12.04 (affective disorders). In narrative form, each consultant concluded that there had been significant improvement with treatment, and that Plaintiff's anxiety was under good control. Tr. at 171-83, 185-97.

On September 19, 2003, Dr. Favazza completed a Medical Assessment of Ability to Do Work Related Activities. In check-box form, Dr. Favazza assessed that Plaintiff had a fair ability to follow work rules, relate to co-workers, deal with the public, use judgment, maintain personal appearance, behave in an emotionally stable manner, and demonstrate reliability. "Fair" was defined on the form as "[a]bility to function in this area is seriously limited, but not precluded." Dr. Favazza further assessed that Plaintiff's abilities were poor to none in the following activities: interact with supervisors, deal with work stresses, function independently, and relate with predictably in social situations. Dr. Favazza wrote that Plaintiff "gets panicky when stressed." Tr. at 306-07.

**Evidentiary Hearing of August 14, 2003**

Plaintiff, represented by counsel, testified that he was single with one adult daughter. At the time, he was 53 years old and had 14 years of formal education, having

---

[3] The listings for these disorders set forth three sets of requirements, sets "A," "B, and "C." An individual is deemed to be disabled when the "A" and "B" criteria are met, or when the "C" criteria are met.

graduated from a two-year technical college. He last worked in 1994. He had worked up until that date for two years as a brake cable assembler, work he described as light, repetitive, and fast. Before that Plaintiff worked as a farmhand cleaning out stables. Plaintiff testified that he could no longer work because he had severe episodes of back pain that lasted several weeks, and that recently, the pain had moved to his hands and joints. He testified that the more he did with his back, the more it hurt. Plaintiff also testified that he had anxiety attacks which seemed to be especially brought on by heat. His heart would begin to beat irregularly, and he would feel dizzy. Plaintiff testified that he was not taking any pain medication because he did not like to take medications -- he had had some allergic reactions to antidepressants and was now generally afraid to take medications. The only medications he was talking were Xanax and Pepcid (an over-the-counter antacid). Tr. at 321-26.

Plaintiff testified that he was restricted to lifting 35-50 pounds, but that about two or three times a year he would lift something weighing much less, turn the wrong way, and end up having to lie on his back for two or three weeks and get around on crutches. Plaintiff testified that even during these spells, he did not take pain medication other than an occasional aspirin. He testified that he had dull pain in his back all the time but had learned to live with it. He testified that he could only sit 30-45 minutes at a time before his back would go numb, and that he had no difficulty walking, though when he walked he felt a "clicking" in his back. Tr. 327-32.

When asked about his daily activities, Plaintiff testified that he mostly stayed

7

home and did not do much besides tending a little vegetable garden that he had. Plaintiff testified that he still had "generalized anxiety," and that he would be taking Zoloft (an antidepressant) and Neurontin for pain and to help him sleep, in addition to the Xanax that he was currently taking. He testified that being around people made him more anxious or nervous, and that he had trouble with social gatherings and expressing himself. Tr. 332-34. A vocational expert testified that Plaintiff could not return to his past work as a farmhand because of the physical demands of that job, but that he could perform the physical demand of his cable brake assembler job. The vocational expert testified that having to be on crutches every once in a while for two to three weeks or having anxiety attacks from being around people would affect Plaintiff's ability to maintain a job. Tr. 334-36.

**ALJ's Decision of December 19, 2003**

The ALJ found that Plaintiff had not worked since 1995, but that the medical evidence of record established that Plaintiff had experienced medical improvement since March 27, 1997. The ALJ found that none of Plaintiff's physical or mental impairments were still "severe," as that term is defined by the relevant regulations.[4] With respect to Plaintiff's mental impairment, the ALJ found that Plaintiff's anxiety-related disorder was

---

[4] A severe impairment is one that significantly limits a person's physical or mental ability to do basic work activities, including physical functions; understanding, carrying out and remembering simple instructions; using judgment, responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b).

well controlled with his prescribed Xanax. The ALJ gave considerable weight to the opinions of the state-agency medical consultants which, according to the ALJ, were supported by Dr. Favazza's treatment notes and by Dr. Solomon's findings. The ALJ stated that little weight was given to Dr. Favazza's September 19, 2003 statement because it was inconsistent with Dr. Favazza's own treatment notes, which indicated that Plaintiff's anxiety-related disorder was well-controlled with Xanax, and with Dr. Favazza's GAF assessment of 70, which represented mild limitations. Tr. at 11-18.

The ALJ found Plaintiff's allegation that his impairments prevented all work activity not credible. The ALJ pointed to Plaintiff's ability to do his own grocery shopping, visit with family and friends, perform household chores, mow his lawn, take care of his garden, and fish with his brother. The ALJ noted that at the hearing, Plaintiff did not appear in any obvious mental or physical distress. The ALJ concluded that Plaintiff could return to his past work as a brake cable assembler, and that his disability had ceased on March 15, 2001. Tr. 18-19.

## DISCUSSION

**Regulatory Framework and Standard of Review**

Under 28 C.F.R. § 404.1594, disability claims must be reviewed periodically to determine if medical improvement has resulted in the claimant's ability to work again. Ply v. Massanari, 251 F.3d 777, 779 (8th Cir. 2001). The process for determining whether a claimant's disability has ceased may involve up to eight steps in which the Commissioner must determine (1) whether the claimant is currently engaging in

substantial gainful activity; if yes, the disability will be found to have ended; (2) if not, whether the disability continues because the claimant's impairments meet or equal the severity of an impairment listed in Appendix 1; (3) if not, whether there has been a medical improvement; (4) if yes, whether it is related to the claimant's ability to work; (5) if there has been no medical improvement or if the medical improvement is not related to the claimant's ability to work, whether any exception to medical improvement applies; (6) if not, whether the claimant's current impairments in combination are severe; (7) if yes, whether the claimant has the residual functional capacity to perform any of his past relevant work; and (8) if not, whether the claimant can perform other work. 20 C.F.R. § 404.1594(f); Dixon v. Barnhart, 324 F.3d 997, 1000-01 (8th Cir. 2003).

In reviewing the termination of disability benefits, a court must affirm the Commissioner's decision so long as it is supported by substantial evidence on the record as a whole. Dixon, 324 F.3d at 1000. "Substantial evidence is that which a 'reasonable mind might accept as adequate to support a conclusion,' whereas substantial evidence on the record as a whole entails 'a more scrutinizing analysis.'" Reed v. Barnhart, 399 F.3d 917, 919 (8th Cir. 2005) (quoting Wilson v. Sullivan, 886 F.2d 172, 175 (8th Cir.1989)). If, after reviewing the record, the court finds that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the Commissioner's decision. Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001). Here, the ALJ determined at step seven that Plaintiff's physical and mental

disabilities had ceased, and that Plaintiff could perform his past work as a brake cable assembler. As noted above, Plaintiff only challenges the ALJ's decision that Plaintiff's mental disability ceased.

**<u>Weight Accorded Opinion of Treating Psychiatrist</u>**

Plaintiff argues that the ALJ committed reversible error in discrediting Dr. Favazza's September 19, 2003 medical statement when determining that Plaintiff's anxiety-related disorder was no longer severe. As noted above, in this statement, Dr. Favazza opined that Plaintiff 's abilities were poor to none in interacting with supervisors, dealing with work stresses, functioning independently, and relating with predictably in social situations. Plaintiff asserts that one reason given by the ALJ for discrediting the statement in question -- that the statement was inconsistent with Dr. Favazza's assessment of a GAF of 70 -- was flawed because the GAF might have been assigned by a social worker and because the GAF was three years old by September 2003. Plaintiff also argues that the ALJ improperly gave more weight to the opinions of the two non-examining consultants.

An ALJ is to give controlling weight to a treating physician's opinion, especially where the physician is a specialist in the relevant area, if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 416.927(d)(2). <u>Tellez v. Barnhart</u>, 403 F.3d 953, 956 (8th Cir. 2005); <u>Guillimas. v. Barhnart</u>, 393 F.3d 798, 801 (8th Cir. 2005). An ALJ, however, may discount the opinion of a treating physician

11

where the opinion is inconsistent with other medical evidence in the record or with the physician's own treatment notes. Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002); Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001).

Here, the Court concludes that the ALJ was entitled to discount Dr. Favazza's September 19, 2003 opinion about the severity of Plaintiff's mental impairment. As the ALJ noted, Dr. Favazza's multiple treatment notes indicate that Plaintiff was doing well on his prescribed dosage of Xanax. Indeed, on January 11, 2001, Dr. Favazza wrote to the state disability agency that Plaintiff's panic disorder was under good control, and that his disability was based on his back problems. There is no evidence that Plaintiff's condition deteriorated since that time, nor does Dr. Favazza present any evidentiary support for this possibility in the September 19, 2003 statement.

Similarly, there is no evidence that Plaintiff's condition deteriorated since March 12, 2000, when he was assigned a GAF of 70, a GAF which would not preclude a return to his former work. While a social worker may have completed the form on which this GAF is noted, Dr. Favazza signed the form. In sum, the Court discerns no error in the ALJ relying upon the consulting physicians rather than upon Dr. Favazza's September 19, 2003 statement. See Lehnartz v. Barnhart, 2005 WL 1767944, at *2-3 (8th Cir. July 27, 2005) (per curiam) (unpublished) (record supported ALJ's weighing of the evidence in determining that claimant's affective disorder of depression did not preclude work; treating psychiatrist's numerous "fair" marks on work-related-activity form and statement that he doubted claimant could manage competitive work were inconsistent with

12

psychiatrist's treatment notes and conclusions of examining and non-examining consulting physicians indicating claimant was not disabled); Krogmeier, 294 F.3d at 1023 (ALJ properly discounted opinion of treating psychiatrist because of its inconsistency with his treatment notes); Hogan, 239 F.3d at 961 (ALJ did not err in discounting portions of treating physician's medical source statement, where the limitations noted in the statement were not mentioned in physician's numerous treatment notes in which claimant's condition was repeatedly described in physician's notes as mild and the records from claimant's other physicians indicated that her condition was being controlled by medication, and the weight of the medical evidence was more in keeping with the restrictions described by the consulting physician).

## CONCLUSION

The ALJ's decision that Plaintiff's mental impairment ceased to be disabling is supported by substantial evidence in the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated on this 24th day of August, 2005